# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

ROBERT SNEAD,
    Petitioner,

Case No. 1:11-cv-127

Spiegel, J.

vs.

Litkovitz, M.J.

WARDEN, MADISON
CORRECTIONAL INSTITUTION,
    Respondent.

**REPORT AND
RECOMMENDATION**

Petitioner, an inmate in state custody at the Madison Correctional Institution in London,

Ohio, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc.

3). This matter is before the Court on respondent's motion to dismiss filed April 29, 2011 (Doc.

6), which is opposed by petitioner. (*See* Doc. 7).[1]

## I. PROCEDURAL HISTORY

### State Conviction And Sentence

In January 2001, the Clermont County, Ohio, grand jury returned a twelve-count

indictment charging petitioner with two counts of aggravated burglary in violation of Ohio Rev.

Code § 2911.11(A) (Counts 1-2); one count of aggravated robbery in violation of Ohio Rev.

Code § 2911.01(A)(1) (Count 3); six counts of kidnapping in violation of Ohio Rev. Code §

2905.01(A) (Counts 4-9); and three counts of felonious assault in violation of Ohio Rev. Code §

2903.11(A)(2) (Counts 10-12).[2] (Doc. 6, Ex. 1). A firearm specification and a "sexual

---

[1]Also pending before the Court for ruling is petitioner's non-dispositive motion requesting the appointment of counsel. (Doc. 8). The undersigned has denied that motion in a separate order issued this date.

[2]In contrast to the general felonious assault charges contained in Counts 10 and 11, petitioner was specifically charged in Count 12 with committing a felonious assault offense against a peace officer as defined in Ohio Rev. Code § 2935.01. (*See* Doc. 6, Ex. 1, p. 3).

motivation" specification were attached to each count. (Doc. 6, Ex. 1). Respondent states that the charges arose from petitioner's "violent home invasion upon a family in the early morning hours" of January 1, 2001. (Doc. 6, Brief, p. 2).

On February 25, 2002, petitioner entered a guilty plea to the aggravated burglary offense charged in Count 1, with firearm specification; the kidnapping offense charged in Count 4, with "sexual motivation" specification; the kidnapping offense charged in Count 5; the felonious assault offense charged in Count 12; and reduced charges of assault in Counts 10 and 11. (Doc. 6, Ex. 2). In exchange for his guilty plea, the State requested and was granted a dismissal of the remaining charges set forth in Counts 2, 3, 6, 7, 8 and 9 of the indictment. (*See* Doc. 6, Ex. 5, p. 1). In addition, the parties agreed to the imposition of a prison sentence totaling twenty-one (21) years. (Doc. 6, Ex. 2, p. 2).

The plea entry, executed by petitioner and filed with the court, set forth the offenses to which petitioner was pleading guilty and the prison terms that could be imposed for each offense, as well as the fact that the State would be "seeking classification." (Doc. 6, Ex. 2, p. 1). In the entry, petitioner stated that he understood that "the MAXIMUM penalty COULD be: a maximum basic prison term of 40 yrs." (Doc. 6, Ex. 2, p. 1). Petitioner further stated in pertinent part:

> If this is a sexually oriented offense, I will be required to register with the Sheriff. The Sheriff may be required to tell my community of my crime and address.
>
> ****
>
> I understand the nature of these charges and the possible defenses I might have. I am satisfied with my attorney's advice, counsel and competence. I am not now under the influence of drugs or alcohol. No threats have been made to me. *No promises have been made except as part of this plea agreement, stated entirely as*

2

*follows: . . . Dismiss cts 2, 6, 7, 8, 9, reduce cts 10, 11 - 21 yr agreed sentence.*

I understand that by pleading guilty I give up my right to a jury trial or court trial, where I could see and have my attorney question witnesses against me, and where I could use the power of the court to call witnesses to testify for me. I know at trial I would not have to take the witness stand and could not be forced to testify against my self and that no one could comment if I chose not to testify. I understand I waive my right to have the prosecutor prove my guilt beyond a reasonable doubt on every element of each charge.

By pleading guilty I admit committing the offense and will tell the Court the facts and circumstances of my guilt. I know the judge may either sentence me today or refer my case for a presentence report. *I understand my right to appeal a maximum sentence, my other limited appellate rights and that any appeal must be filed within 30 days of my sentence. . . .* I enter this plea voluntarily.

(Doc. 6, Ex. 2, p. 2) (emphasis added). After holding a hearing and concluding that the plea was

entered "knowingly, intelligently, and voluntarily," the trial court accepted petitioner's guilty

plea and found petitioner "GUILTY of each offense to which Defendant has entered this plea."

(Doc. 6, Ex. 2, p. 2 & Ex. 3). The matter was referred for pre-sentence report. (Doc. 6, Ex. 3).

Thereafter, on March 4, 2002, the trial court held a hearing where it was determined that

petitioner was a "sexual predator" subject to sex offender registration and notification under

Ohio Rev. Code Chapter 2950. (Doc. 6, Ex. 4). After a sentencing hearing held the same date,

the court issued a "Judgment Entry Of Sentence" on March 11, 2002, imposing an aggregate

prison sentence of twenty-one (21) years in accordance with the terms of the parties' plea

agreement. (Doc. 6, Ex. 5).[3]

---

[3]Specifically, petitioner was sentenced to the following terms of imprisonment: a 10-year prison term for the aggravated burglary offense charged in Count 1, to be served consecutively to a 3-year prison term for the attached firearm specification; a concurrent 10-year prison term for the felonious assault offense charged in Count 12; 8-year prison terms for the kidnapping offenses charged in Counts 4 and 5, to be served concurrently to each other but consecutively to the 10-year concurrent prison term imposed for the offenses charged in Counts 1 and 12; and concurrent 6-month prison terms for the reduced assault offenses contained in Counts 10 and 11. (Doc. 6, Ex. 5, p. 2).

## Motion To Withdraw Guilty Plea

Petitioner did not pursue a timely appeal to the Ohio Court of Appeals. Indeed, it appears from the record that petitioner did not take any action to challenge his conviction or sentence until nearly six years later, when, on January 15, 2008, he filed a *pro se* motion to withdraw his guilty plea with the trial court. (*See* Doc. 6, Exs. 6, 31).

In the motion filed pursuant to Ohio R. Crim. P. 32.1, petitioner claimed that his trial attorney improperly induced him to plead guilty by threatening him "with a potential 54 year prison term" if he refused to follow counsel's advice to enter the plea. (Doc. 6, Ex. 6, p. 2). Petitioner also alleged that his trial attorney erroneously advised him to agree to a 21-year prison term; he claims that only a six-year maximum sentence could be imposed for his offenses in light of the Ohio Supreme Court's ruling in *State v. Foster*, 845 N.E.2d 470 (Ohio 2006), that certain provisions of Ohio's sentencing statutes were unconstitutional under the Supreme Court's decision in *Apprendi v. New Jersey,* 530 U.S. 466 (2000), as extended four years later in *Blakely v. Washington,* 542 U.S. 296 (2004). (Doc. 6, Ex. 6, pp. 2-3). On March 11, 2008, the trial court denied petitioner's motion, reasoning that "a minimum sentence was never required during the period between the announcement of *Apprendi* and Ohio's corrective response in *State v. Foster.*" (Doc. 6, Ex. 7).

Petitioner timely appealed to the Ohio Court of Appeals, Twelfth Appellate District. (Doc. 6, Ex. 8). He filed a merits brief, raising the following claim as the sole assignment of error: "The trial court erred and abused its discretion in failing to grant relief based on counsel's erroneous advice regarding the maximum penalty which rendered Appellant's plea invalid." (Doc. 6, Ex. 9). On October 14, 2008, the Ohio Court of Appeals overruled the assignment of

4

error and affirmed the trial court's judgment. (Doc. 6, Ex. 11). Respondent states that petitioner did not pursue a further appeal to the Ohio Supreme Court in that matter. (Doc. 6, Brief, p. 4).

## State Post-Conviction Proceedings

On December 28, 2009, over a year after the Ohio Court of Appeals issued its decision affirming the denial of petitioner's motion to withdraw his guilty plea, petitioner next filed with the trial court a *pro se* petition to vacate or set aside judgment. (Doc. 6, Ex. 12). In the petition filed pursuant to Ohio Rev. Code § 2953.21, petitioner alleged that (1) he was multiply punished for "allied offenses of similar import," in violation of his rights under the Fifth Amendment's Double Jeopardy Clause; (2) the trial court erred in failing to hold a hearing to determine whether any of the charged offenses constituted "allied offenses of similar import;" (3) the trial court erred in finding that he "committed the worst form of a single offense and sentenced him to the maximum on more than one offense;" (4) his sentence was rendered void by the trial court's failure "to comply with statutory mandates regarding the imposition of post-release control;" (5) the trial court erred when it allowed the charge of felonious assault on a peace officer to proceed against the manifest weight of the evidence;" and (6) his trial attorney provided ineffective assistance by advising him to enter a guilty plea "without bothering to obtain the case file from the previous attorney trying the case" or to review the "discovery packet," which would have revealed that the evidence was insufficient to support a conviction on the felonious assault charge contained in Count 12. (Doc. 6, Ex. 12).

On January 26, 2010, the trial court overruled petitioner's motion for post-conviction relief on the ground that it lacked jurisdiction to consider the petition, which was not filed "within 180 days of the filing of the transcript in the appeal, or, if no transcripts are filed, from

5

the notice of the completion of the record," as required by Ohio Rev. Code § 2953.21(A)(2). (Doc. 6, Ex. 13). Specifically, the court found that when petitioner appealed the trial court's March 11, 2008 ruling denying his motion to withdraw the guilty plea, no transcripts were filed in the appeal, but the "[t]he notice of complete record was filed April 14, 2008." (Doc. 6, Ex. 13, p. 2). The court determined that because petitioner was required by statute to file a post-conviction petition within 180 days thereafter, or by October 13, 2008, the post-conviction petition filed December 28, 2009 was submitted too late, "about one year and three months beyond the filing deadline." (Doc. 6, Ex. 13, p. 3). The court reasoned further that it was not permitted to entertain the untimely petition because petitioner had not demonstrated under Ohio Rev. Code § 2953.23 that (1) "he was unavoidably prevented from discovering the facts upon which he relies in the petition, or that the United States Supreme Court has recognized a new federal or state right that applies retroactively to the defendant;" *and* (2) clear and convincing evidence shows "that, but for the constitutional error, a reasonable factfinder would not have found him guilty." (Doc. 6, Ex. 13, pp. 2-3).

It appears from the record that petitioner did not pursue an appeal in the state courts from the trial court's ruling denying the post-conviction petition as untimely. (Doc. 6, Brief, p. 4 & Ex. 31). Instead, nearly six months later, on June 18, 2010, petitioner filed another post-conviction petition with the trial court. (*See* Doc. 6, Exs. 14, 31). In that petition, petitioner contended that he "was unavoidably prevented from the discovery of the evidence and facts [he] must rely on to prove" his ineffective-assistance-of-trial-counsel claims. (Doc. 6, Ex. 14). On July 20, 2010, the trial court overruled the application for post-conviction relief on the ground that it constituted a successive petition prohibited by Ohio Rev. Code § 2953.23(A). (Doc. 6, Ex.

6

15). The court reasoned in pertinent part:

> This is a second petition, and Snead does not address the fact that he filed a
> previous petition only six months before. Further, he does not rely upon a newly
> discovered fact or a new constitutional rule that would excuse his successive
> filing. His affidavits were prepared after the first petition, but his claims are
> exclusively based upon what transpired at the plea hearing or sentencing. For this
> reason, the Court lacks the jurisdiction to consider the petition.

(Doc. 6, Ex. 15, p. 3).

Petitioner filed a notice of appeal to the Ohio Court of Appeals, Twelfth Appellate

District, on August 20, 2010. (Doc. 6, Ex. 16). On September 15, 2010, the state appellate court

dismissed the appeal because the notice of appeal, which was filed one day after the 30-day

appeal period ended, "was not filed in a timely manner." (Doc. 6, Ex. 17). Respondent states

that petitioner did not pursue a further appeal to the Ohio Supreme Court. (Doc. 6, Brief, p. 5).

## Motion For Delayed Appeal

On June 18, 2010, the same date he filed his second petition for post-conviction relief

with the trial court, petitioner filed a notice of appeal and a motion pursuant to Ohio R. App. P. 5

for leave to filed a delayed appeal to the Ohio Court of Appeals, Twelfth Appellate District, from

the trial court's March 11, 2002 judgment entry of conviction and sentence. (Doc. 6, Exs. 18-

19).[4] Petitioner claimed as cause for his delay in filing that he was represented by his trial

attorney until October 2, 2006; that he was taking psychotropic medications from "approximately

three weeks after [his] arrest until September of 2007," which impaired his "cognitive functions;"

that "[f]rom early 2008 until November 2008," he took another medication for "chronic nerve

---

[4]On June 18, 2010, petitioner also filed a motion with the Ohio Court of Appeals, Twelfth Appellate
District, requesting that the trial court be ordered to vacate and re-enter the judgment of sentence, "thus restarting the
time in which to perfect a direct appeal of conviction as well as other post-conviction remedies." (Doc. 6, Ex. 25).
The motion was denied without opinion on August 6, 2010. (Doc. 6, Ex. 26).

pain, which also impairs cognitive functions;" that he suffered a "major clinical depression" while incarcerated, which "spanned several years;" that he had limited access to the prison law library, which is inadequate and contains "a tremendous amount of disinformation;" and that, as a lay person, he did not know about his appellate rights and relied on an inmate clerk's erroneous advice that "the only thing I could file was the C.R. 32 [motion] to withdraw my plea." (Doc. 6, Ex. 19).

On August 20, 2010, the Ohio Court of Appeals denied petitioner's motion for delayed appeal without opinion. (Doc. 6, Ex. 24). Petitioner timely appealed to the Ohio Supreme Court, raising thirty-seven propositions of law. (Doc. 6, Ex. 27). On December 1, 2010, the Ohio Supreme Court denied petitioner leave to appeal and summarily dismissed the appeal "as not involving any substantial constitutional question." (Doc. 6, Ex. 30).

## Federal Habeas Corpus

The instant federal habeas corpus action commenced on March 1, 2011. (*See* Doc. 1). The petition, which petitioner states "was placed in the prison mailing system on February 17, 2011," was docketed on March 7, 2011, when petitioner was granted leave to proceed *in forma pauperis*. (*See* Doc. 3, p. 16; *see also* Doc. 2). In the petition, petitioner alleges sixteen grounds for relief:

**Ground One:** Multiplicitous Indictment.

**Supporting Facts:** This was a single continuous incident. I was charged with (6) counts of kidnap[p]ing on 2 people[,] (2) counts of aggravated Burglary for entering 1 building once, (3) counts of Felonious assault, when none occurred[,] 1 aggravated robbery, when nothing was taken or attempted to be taken.

This contributed to the impression that I commit[t]ed more offenses than I actually did, and being convicted of 1 more than I actually commit[t]ed.

8

**Ground Two:** Allied Offenses (grouping) Double Jeopardy.

**Supporting Facts:** I was indicted with the same animus on every charge[;] it is clear that I had but one motivation. When using the State's own reasoning a[nd] disregarding the order the offenses occurred in, I could not have kidnap[p]ed the occupants of the home without first entering the premises. As such[,] the offenses in this case . . . are allied offenses of similar import committed with but a single animus or motivation.

**Ground Three:** Maximum or near Maximum terms were inappropriate.

**Ground Four:** Being viewed by the judge in oranges, shackles & cuffs was prejudicial and the judge was biased by such.

**Ground Five:** Ineffective assistance of counsel.

**Ground Six:** Consecutive sentences being improper.

**Ground Seven:** Near maximum and maximum terms being improper.

**Ground Eight:** The conviction of felonious assault on a peace officer is against the manifest weight of the evidence. Actual innocence.

**Ground Nine:** The trial court failed to compare Snead's sentence with that of similarly situated offenders.

**Ground Ten:** The sentencing range was improperly given.

**Ground Eleven:** Judge[']s participation in the plea deal was improper and coercive.

**Ground Twelve:** Snead's *Miranda* right and Fourth Amendment right were violated.

**Ground Thirteen:** The trial court failed to properly consider recidivism factors and the rule of lenity.

**Ground Fourteen:** The sexual predator adjudication was improper.

**Ground Fifteen:** Snead's plea was involuntary.

**Ground Sixteen:** Post release control was not properly imposed.

(*See* Doc. 3, pp. 6, 8, 9, 11 & "Memorandum In Support Of Jurisdiction With Additional Grounds And Arguments").

Respondent has filed a motion to dismiss the petition. (Doc. 6). Respondent contends that the petition is subject to dismissal with prejudice because it is barred from review by the one-year statute of limitations governing federal habeas petitions set forth in 28 U.S.C. § 2244(d). (Doc. 6, pp. 6-12). Petitioner opposes the motion to dismiss. (Doc. 7).

## II. RESPONDENT'S MOTION TO DISMISS (DOC. 6) SHOULD BE GRANTED

Under 28 U.S.C. § 2244(d)(1), as amended by § 101 of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, a person in custody pursuant to the judgment of a state court must file an application for a writ of habeas corpus within one year from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Under 28 U.S.C. § 2244(d)(2), the running of the limitations period is tolled during the pendency of a properly filed application for state post-conviction relief or other collateral review.

In this case, the Court must first determine which limitations provision contained in 28

U.S.C. § 2244(d)(1) applies to petitioner's claims for relief. Respondent contends that petitioner's grounds for relief are governed by the one-year statute of limitations set forth in § 2244(d)(1)(A), because they are based on errors allegedly occurring before or during the state plea-taking and sentencing proceedings, which could have been discovered in the exercise of due diligence before petitioner's conviction became final by the conclusion of direct review or expiration of time for seeking such review. (Doc. 6, Brief, pp. 6-7).

Petitioner's conviction became final on April 10, 2002, when the 30-day period expired for filing an appeal as of right to the Ohio Court of Appeals from the trial court's March 11, 2002 final judgment entry. *See* Ohio R. App. P. 4(A). Therefore, if the § 2244(d)(1)(A) limitations provision applies here, the statute commenced running on April 11, 2002, one day after petitioner's conviction became final, *see* Fed. R. Civ. P. 6(a); *Bronaugh v. Ohio,* 235 F.3d 280, 285 (6th Cir. 2000), and ended one year later on April 11, 2003.[5] Because petitioner did nothing to challenge his conviction or sentence in the state courts until he filed his motion to withdraw his guilty plea nearly five years later in January 2008, the statutory tolling provision set forth in §

---

[5]Petitioner's motion filed in January 2008 to withdraw his guilty plea did not serve to restart the running of the limitations period under § 2244(d)(1)(A). *See, e.g., Goodballet v. Mack,* 266 F. Supp.2d 702, 707 (N.D. Ohio 2003) (citing *Thompson v. Chandler,* 36 F. App'x 783, 785 (6th Cir. 2002)); *Dickey v. Warden, Lebanon Corr. Inst.,* No. 1:08cv819, 2010 WL 92510, at *1, *4 (S.D. Ohio Jan. 6, 2010) (Beckwith, J.; Black, M.J.); *Chan Ouch v. Warden, London Corr. Inst.,* No. 2:09cv173, 2009 WL 950661, at *3-4 (S.D. Ohio Apr. 1, 2009) (Kemp, M.J.) (Report & Recommendation) (and cases cited therein), *adopted,* 2009 WL 1545765 (S.D. Ohio June 3, 2009) (Smith, J.); *Coffey v. Warden, Warren Corr. Inst.,* No. 1:06cv717, 2007 WL 951619, at *1, *3-4 (S.D. Ohio Mar. 28, 2007) (Dlott, J.; Black, M.J.). Similarly, petitioner's unsuccessful motion filed in June 2010 for leave to file a delayed appeal to the Ohio Court of Appeals did not restart the running of the statute under § 2244(d)(1)(A). *See, e.g., Applegarth v. Warden, North Cent. Corr. Inst.,* 377 F. App'x 448, 449-50 (6th Cir. 2010); *Winkfield v. Bagley,* 66 F. App'x 578, 582 (6th Cir. 2003); *see also Little v. Warden, Warren Corr. Inst.,* No. 1:10cv468, 2011 WL 2358565, at *4 n.2 (S.D. Ohio May 16, 2011) (Litkovitz, M.J.) (Report & Recommendation) (noting that although the Supreme Court held in *Jimenez v. Quarterman,* 555 U.S. 113, 120-21 (2009), that the *granting* of a delayed appeal motion restores the pendency of the direct appeal, thereby rendering the conviction non-final under § 2244(d)(1)(A), a delayed appeal motion that is *denied* does not restart the limitations period), *adopted,* 2011 WL 2293316 (S.D. Ohio June 9, 2011) (Bertelsman, J.); *cf. Searcy v. Carter,* 246 F.3d 515, 518-19 (6th Cir. 2001).

2244(d)(2) was not triggered during the applicable one-year period by the filing of any "properly filed" applications for state post-conviction relief or other collateral review. *See* 28 U.S.C. § 2244(d)(2); *Holland v. Florida,* __ U.S. __, 130 S.Ct. 2549, 2554 (2010); *Allen v. Siebert,* 552 U.S. 3, 4 (2007) (per curiam); *see also Vroman v. Brigano,* 346 F.3d 598, 602 (6th Cir. 2003) (holding that under the statutory tolling provision, state collateral review proceedings cannot serve to toll a limitations period that has already expired).

In his brief filed in response to respondent's motion to dismiss, petitioner suggests that his counsel failed to file an appeal to the Ohio Court of Appeals "when directed to do so." (Doc. 7, p. 1). Petitioner states that he was "represented by Counsel until October of 2006" and that he, therefore, "had reasonable expectations that his Counsel was looking after his interests, when in fact [counsel] was not." (Doc. 7, p. 1).

The one-year limitations provision set forth in § 2244(d)(1)(B) has been found to apply in cases where the petitioner has alleged that his counsel was ineffective in failing to perfect or pursue an appeal requested by him and such ineffectiveness actually prevented the petitioner from filing a timely habeas petition. *See, e.g., Waldron v. Jackson,* 348 F. Supp.2d 877, 882-86 (N.D. Ohio 2004); *Woods v. Jackson,* No. 1:00cv803, 2006 WL 746293, at *5-7 (S.D. Ohio Mar. 22, 2006) (Spiegel, J.); *see also Winkfield v. Bagley,* 66 F. App'x 578, 582-83 (6th Cir. 2003); *Batista v. Warden, Lebanon Corr. Inst.,* No. 1:08cv635, 2009 WL 3259289, at *2, *7 (S.D. Ohio Oct. 7, 2009) (Spiegel, J.; Hogan, M.J.) (and numerous cases cited therein).[6] However, any such

---

[6]*But see Dunker v. Bissonnette,* 154 F. Supp.2d 95, 105 (D. Mass. 2001) (rejecting argument that the petitioner's court-appointed attorney was a "state actor" under § 2244(d)(1)(B)); *Cinocco v. Smelser,* No. 10-cv-01722-BNB, 2011 WL 65084, at *4 (D. Colo. Jan. 6, 2011) (same); *Rith v. Clark,* No. 1:10-cv-0797 SMS HC, 2010 WL 3582591, at *3 (E.D. Cal. Sept. 10, 2010) (and cases cited therein) (same); *Hill v. Mullin,* No. CIV-09-1003-F, 2010 WL 446584, at *2 & n.8 (W.D. Okla. Feb. 1, 2010) (and cases cited therein) (same); *O'Neal v. South Carolina,* Civ. Act. No. 9:08-587-HFF-BM, 2008 WL 4960423, at *3 (D.S.C. Nov. 20, 2008) (following *Lawrence*

impediment to filing was removed in this case by the time petitioner discovered in October 2006 that his counsel was not representing his interests as he had originally been led to believe. Therefore, even if § 2244(d)(1)(B) applies to delay the limitations period, the statute would have begun to run at the latest in October 2006, expiring one year later in October 2007. As discussed above, petitioner did not pursue any post-conviction or other remedy in the state courts until January 2008, after the one-year period ended. Indeed, petitioner did not file his motion for delayed appeal with the Ohio Court of Appeals until June 2010, over eight years after he was convicted and sentenced and nearly four years after he purportedly learned that his trial counsel had not filed an appeal on his behalf. Accordingly, to the extent that it can be argued that § 2244(d)(1)(B) governs petitioner's claims for relief, the petition is still time-barred. *Cf. Ratliff v. Jefferys,* No. 3:06cv1931, 2007 WL 4248173, at *5 (N.D. Ohio Nov. 30, 2007) (holding that § 2244(d)(1)(B) was inapplicable in a case where the petitioner failed to file his federal habeas corpus petition within one year after the alleged state impediment was removed).

To the extent petitioner has alleged as a ground for relief that his aggregate 21-year prison sentence is unconstitutional under *Apprendi*, as extended in *Blakely* and applied to Ohio's sentencing statutes in *Foster*, he is unable to prevail on any argument that those decisions create a jurisdictional issue that may be raised at any time or otherwise serve to delay or extend the one-year limitations period under the alternative limitations provisions set forth in 28 U.S.C. §§ 2244(d)(1)(C) and 2244(d)(1)(D).

In March 2002, when petitioner was convicted and sentenced, the Supreme Court had

---

*v. Florida,* 421 F.3d 1221, 1226 (11th Cir. 2005), *aff'd on other grounds,* 549 U.S. 327 (2007), in holding that "the actions of a criminal defense attorney . . . are not state action" within the meaning of § 2244(d)(1)(B)), *appeal dismissed,* 328 F. App'x 283 (4th Cir. 2009).

already decided *Apprendi*, which was the forerunner of *Blakely* to the extent that the Court recognized for the first time that the Sixth Amendment right to a jury trial attaches to a sentence which increases the penalty for a crime beyond the prescribed statutory maximum. *See Apprendi,* 530 U.S. at 490. However, it was not until the Supreme Court decided *Blakely* in June 2004 that the "statutory maximum" was defined to include "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely,* 542 U.S. at 303. Moreover, it was not until the Supreme Court decided *United States v. Booker,* 543 U.S. 220 (2005), in January 2005, that *Blakely* was deemed applicable to mandatory sentencing provisions contained in the federal sentencing guidelines. Only thereafter, in February 2006, did the Ohio Supreme Court decide in *Foster* that certain presumptive sentencing provisions contained in Ohio's sentencing statutes constituted a violation of Sixth Amendment principles enunciated in *Blakely*, as extended in *Booker. See Foster,* 845 N.E.2d at 487-88.[7]

The *Blakely/Booker* and *Foster* decisions did not erect a jurisdictional barrier for sentencing courts. To remedy the constitutional infirmities found in Ohio's sentencing statutes, the *Foster* court adopted the approach used by the Supreme Court in *Booker* with respect to the federal sentencing guidelines, of severing the four *Blakely*-offending portions of Ohio's

---

[7]Specifically, in *Foster*, the court ruled that, despite the fact that "[m]ost Ohio appellate courts have determined that *Blakely* is inapplicable" to Ohio's sentencing statutes, portions of the statutes had been "eviserated by *Blakely.*" *Foster,* 845 N.E.2d at 487-88. The *Foster* court found that "Ohio's sentencing statutes offend the constitutional principles announced in *Blakely* in four areas" mandating additional judicial fact-finding before the imposition of (1) more than the minimum term for those who have never served a prison term; (2) the maximum prison term; (3) consecutive prison terms; and (4) repeat-violent-offender and major-drug-offender penalty enhancements. *See id.* at 490-94. After *Foster* was decided, the Supreme Court issued a decision upholding the constitutionality of a state sentencing statute that constrained the trial court's discretion by requiring it to find certain facts before imposing consecutive, rather than concurrent, sentences. *See Oregon v. Ice,* 555 U.S. 160 (2009). Although the *Foster* court held a similar provision in Ohio's sentencing statute was *Blakely*-offending, *see Ice,* 555 U.S. at 167 n.7, it is now clear under the Supreme Court's decision in *Ice* that no Sixth Amendment concerns are triggered with respect to consecutive sentencing decisions. *See Ice,* 555 U.S. at 167-72.

14

sentencing statutes and granting trial courts "full discretion to impose a prison sentence within the statutory range" without having to make findings or give reasons for imposing maximum, consecutive, or more than minimum sentences. *See Foster,* 845 N.E.2d at 494-98. By excising the provisions that rendered Ohio's sentencing scheme mandatory and thus permitting the sentencing court broad discretion to impose a sentence within the applicable statutory range, the *Foster* court adopted a remedy that, as in *Booker*, 542 U.S. at 233, "encounters no Sixth Amendment shoal" and thus certainly no jurisdictional hurdle. *Cf. Bowman v. Warden, Lebanon Corr. Inst.,* No. 1:08cv343, 2009 WL 943847, at *1, *6 (S.D. Ohio Apr. 6, 2009) (Beckwith, J.; Black, M.J.).

In addition, it appears that *Apprendi, Blakely* and *Foster* do not apply to the case-at-hand because petitioner and the State agreed to the 21-year prison sentence as a term of their plea bargain. Ohio Rev. Code § 2953.08(D) provides that a "sentence imposed upon a defendant is not subject to review . . . if the sentence is authorized by law, has been recommended jointly by the defendant and the prosecution in the case, and is imposed by a sentencing judge." In *Foster*, the Ohio Supreme Court did not strike down that provision as *Blakely*-offending, nor did the court change the statutory range of punishments. Since *Foster*, both the state and federal courts have agreed that "the line of Supreme Court cases leading up to and resulting from *Blakely* are inapplicable to a stipulated sentence authorized by state law and imposed in accordance with the parties' plea agreement, which relieves the onus of fact-finding from the trial court." *See, e.g., Batista, supra,* 2009 WL 3259289, at *2, *10 (and numerous cases cited therein); *Chatman v. Wolfe*, No. 1:06cv280, 2007 WL 2852341, at *6 (S.D. Ohio Oct. 1, 2007) (Barrett, J.; Black, M.J.); *see also Reese v. Warden, Trumbull Corr. Inst.,* No. 2:09cv188 , 2011 WL 94612, at *11

15

(S.D. Ohio Jan. 10, 2011) (Deavers, M.J.) (Report & Recommendation), *adopted,* 2011 WL

308271 (S.D. Ohio Jan. 28, 2011) (Graham, J.); *Jordan v. Sheets,* No. 3:08cv252, 2010 WL

4939968, at *5 (S.D. Ohio Nov. 9, 2010) (Ovington, M.J.) (Report & Recommendation),

*adopted,* 2010 WL 4932672 (S.D. Ohio Nov. 30, 2010) (Rose, J.); *Dickey v. Warden, Lebanon

Corr. Inst.,* No. 1:08cv819, 2010 WL 92510, at *1, *5 n.4 (S.D. Ohio Jan. 6, 2010) (Beckwith,

J.; Black, M.J.). *Accord State v. Porterfield,* 829 N.E.2d 690, 694 (Ohio 2005) (holding that

under Ohio Rev. Code § 2953.08(D), "[o]nce a defendant stipulates that a particular sentence is

justified, the sentencing judge need not independently justify the sentence").[8] *Cf. Kelley v.

Brunsman,* 625 F. Supp.2d 586, 603-04 (S.D. Ohio 2009) (Spiegel, J.; Hogan, M.J.) (quoting

*Todd v. Wolfe,* No. 1:05cv737, 2007 WL 951616, at *7 n.8 (S.D. Ohio Mar. 28, 2007) ("by

agreeing as a term of the plea bargain to a specified prison sentence . . . [the] petitioner waive[s]

any argument that such sentence was imposed under statutory standards held to be

unconstitutional by the [Ohio] Supreme Court in . . . *Foster* . . . in light of *Blakely*"). In *Kelley,*

the Court explained that because the sentence in this context arises "directly from the plea

agreement itself and not on any judicially-found facts," no Sixth Amendment *Blakely* concerns

are implicated. *Id.* at 604.

---

[8] As noted in *Batista, supra,* 2009 WL 3259289, at *10 n.9, a "contrary decision" was reached in *Friley v.
Wolfe,* No. 2:05cv396, 2006 WL 3420209 (S.D. Ohio Nov. 27, 2006) (Marbley, J.). However, courts faced with the
issue after *Friley* have all declined to follow that precedent. *See, e.g., Batista, supra,* 2009 WL 3259289, at *10 n.9;
*Husband v. Warden, Lebanon Corr. Inst.,* No. 1:08cv766, 2009 WL 7099304, at *4 & n.5 (S.D. Ohio Aug. 18,
2009) (Hogan, M.J.) (Report & Recommendation) (quoting *Salce v. Wilson,* No. 3:08cv674, 2009 WL 1797923, at
*7 & n.69 (N.D. Ohio June 24, 2009), wherein the district court concluded that "*Friley* is 'contrary to Ohio and
federal case authority'"), *adopted,* 2010 WL 4513798 (S.D. Ohio Nov. 1, 2010) (Barrett, J.); *Brown v. Voorhies,* No.
2:07cv14, 2009 WL 187830, at *9 (S.D. Ohio Jan. 26, 2009) (Sargus, J.). *Cf. Suttles v. Wolfe,* 1:06cv55 (S.D. Ohio
July 17, 2007) (Spiegel, J.; Hogan, M.J.) (Doc. 13, pp. 7, 10; *see also* Doc. 12, pp. 18-20) (unpublished) (where the
district judge assigned to the instant case held that "despite the contrary decision in *Friley* . . ., because the trial
court imposed a sentence based on facts Petitioner admitted to in the plea agreement, and not on any judicially
ascertained facts, Petitioner's sentence could not be in violation of the Sixth Amendment or *Blakely*").

Here, petitioner's aggregate sentence was authorized by law to the extent that it did not exceed the terms of imprisonment that the trial court was permitted by statute to impose upon petitioner's convictions for aggravated burglary with firearm specification; felonious assault; kidnapping; and assault. Therefore, petitioner is not entitled to a delayed starting date of the one-year limitations period for the purpose of challenging his sentence, which was imposed in March 2002 in accordance with the parties' plea agreement. *Cf. Moore v. Wilson*, No. 1:08cv2029, 2009 WL 2399122, at *2, *11-12 (N.D. Ohio Aug. 4, 2009).

In any event, to the extent petitioner alleges a violation of *Apprendi*, §§ 2241(d)(1)(C) and 2244(d)(1)(D) are inapplicable because *Apprendi* was in effect and thus was discoverable and did not announce a "newly recognized" constitutional right by the time petitioner was convicted and sentenced in March 2002. *See, e.g., Dickey, supra,* 2010 WL 92510, at *1, *5 n.6 (citing *Keeling v. Warden, Lebanon Corr. Inst.,* No. 1:08cv231, 2009 WL 1065870, at *1, *10 n.9 (S.D. Ohio Apr. 20, 2009) (Barrett, J.; Black, M.J.); *Bowman, supra,* No. 2009 WL 943847, at *1, *7 n.8). Furthermore, *Blakely, Booker* and *Foster* do not retroactively apply to delay the limitations period under § 2244(d)(1)(C) or § 2244(d)(1)(D) because petitioner's conviction became final years before those decisions were rendered.[9] *See, e.g., Collins v. Warden, London Corr. Inst.,* No. 1:08cv452, 2009 WL 1809979, at *1, *5 (S.D. Ohio June 23, 2009) (Dlott, J.; Hogan, M.J.) (and cases cited therein); *Bowman, supra,* 2009 WL 943847, at *1, *6-7 & n.7 (and numerous cases cited therein); *see also Taniguchi v. United States,* 262 F. App'x 714, 715-16

_____

[9]The Supreme Court has stated that "[s]tate convictions are final 'for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for writ of certiorari has elapsed or a timely petition has been finally denied.'" *See Beard v. Banks,* 542 U.S. 406, 411 (2004) (quoting *Caspari v. Bohlen,* 510 U.S. 383, 390 (1994)); *see also Allen v. Moore,* Case No. 1:05cv731, 2007 WL 651248, at *4 n.1. (S.D. Ohio Feb. 23, 2007) (Barrett, J.).

17

(6th Cir. 2008) (per curiam) (following *Humphress v. United States,* 398 F.3d 855, 860-63 (6th Cir. 2005), and other supporting cases, in holding that "*Blakely* and *Booker* do not apply retroactively to cases pending on collateral review" after the petitioner's conviction has become final on direct appeal); *Foster,* 845 N.E.2d at 499 (extending its holding only to those cases still pending on direct review). *Cf. Ratliff, supra,* 2007 WL 4248173, at \*5, \*11-12 (holding that (1) § 2244(d)(1)(C) was inapplicable because *Foster* was not decided by the United States Supreme Court, and the underlying *Blakely* decision did not apply retroactively to permit collateral review of the petitioner's sentence; and (2) § 2244(d)(1)(D) was inapplicable because the petitioner "was aware of the factual predicate of his claims on the date of his sentencing"); *Hanna v. Jeffreys,* No. 2:05cv727, 2006 WL 462357, at \*6 (S.D. Ohio Feb. 22, 2006) (King, M.J.) (Report & Recommendation) (holding that "§ 2244(d)(1)(C) does not serve to delay the date the statute of limitations began to run as to petitioner's claim that his sentence violates *Blakely* . . . because *Blakely* is not retroactively applicable to cases on collateral review"), *adopted,* 2006 WL 689060 (S.D. Ohio Mar. 16, 2006) (Graham, J.).

Accordingly, in sum, the undersigned concludes that petitioner's claims for relief are time-barred unless petitioner is entitled to equitable tolling. The AEDPA's statute of limitations is subject to equitable tolling, *see Holland,* 130 S.Ct. at 2560, "when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond the litigant's control." *Hall v. Warden, Lebanon Corr. Inst.,* __ F.3d __, No. 09-3372, 2011 WL 5965837, at \*3 (6th Cir. Nov. 30, 2011) (quoting *Robertson v. Simpson,* 624 F.3d 781, 783 (6th Cir. 2010)). Equitable tolling is granted "sparingly." *Id.* (quoting *Robertson,* 624 F.3d at 784). A habeas petitioner is entitled to equitable tolling only if he establishes that (1) "he has been pursuing his rights

diligently;" and (2) "some extraordinary circumstance stood in his way and prevented timely filing." *Id.* (quoting *Holland*, 130 S.Ct. at 2562 (internal quotations omitted)); *see also Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). Although the Sixth Circuit previously utilized a five-factor approach in determining whether a habeas petitioner is entitled to equitable tolling, *Holland*'s two-part test has replaced the five-factor inquiry as the "governing framework" to apply. *Hall, supra*, 2011 WL 5965837, at *3-4 (citing *Robinson v. Easterling*, 424 F. App'x 439, 442 n.1 (6th Cir.), *cert. denied*, 132 S.Ct. 456 (2011)). "With *Holland* now on the books, the 'extraordinary circumstances' test, which requires both reasonable diligence and an extraordinary circumstance, has become the law of this circuit." *Id.* at *4.

Petitioner has not demonstrated that he is entitled to equitable tolling in this case. First, he has not been diligent in pursuing his rights. He took no action to challenge his conviction or sentence until January 2008, when he filed his motion to withdraw his guilty plea, nearly six years after the trial court entered final judgment in March 2002. (*See* Doc. 6, Exs. 5, 6, 31). He did not pursue an appeal to the Ohio Supreme Court when the Ohio Court of Appeals affirmed the denial of the motion to withdraw guilty plea on October 14, 2008. (*See* Doc. 6, Brief, p. 4 & Ex. 11). Moreover, he sat on his rights for over a year before next challenging his conviction and sentence by way of a petition for state post-conviction relief, which was filed with the trial court on December 28, 2009. (*See* Doc. 6, Ex. 12). After the trial court overruled the post-conviction petition as untimely on January 26, 2010, petitioner did not pursue an appeal from that ruling and instead waited another five months before filing, on June 18, 2010, a second post-conviction petition with the trial court and a motion for delayed appeal with the Ohio Court of Appeals. (*See* Doc. 6, Exs. 13, 14, 18-19, 31). The instant habeas petition was filed close to nine years

after petitioner was convicted and sentenced. Petitioner's lengthy delay in seeking relief in the state courts, as well as in filing the instant action, demonstrate that he has not acted with reasonable diligence in pursuing his rights.

Second, petitioner has not shown that he was prevented by some extraordinary circumstance from seeking relief in a more timely matter. In the plea entry executed by petitioner and filed with the court, petitioner stated that he understood that he had certain appellate rights and that "any appeal must be filed within 30 days of my sentence." (Doc. 6, Ex. 2). Petitioner alleges that he asked his trial counsel to file an appeal on his behalf and "had expectations that said counsel was active on his behalf." (Doc. 7, pp. 1, 3; *see also* Doc. 6, Ex. 19). However, petitioner has also stated that he "terminated" counsel's employment in October 2006 when he discovered that the attorney had not been "looking after his interests." (Doc. 6, Ex. 19; Doc. 7, p. 1). Therefore, even if petitioner reasonably assumed his counsel would timely pursue state appeal and post-conviction remedies at the time he was sentenced in March 2002, any equitable tolling of the limitations period stemming from that assumption would have ended by October 2006. Petitioner did not attempt to challenge his conviction or sentence in the state courts until over a year later in January 2008. Most importantly, he did not pursue the remedy of a delayed appeal until nearly four years later in June 2010. Therefore, petitioner cannot prevail on any argument that he is entitled to equitable tolling because his counsel's ineffectiveness constituted an extraordinary circumstance that should excuse the statute-of-limitations bar to review. *Cf. Robinson*, 424 F. App'x at 443 (and cases cited therein) (in affirming the denial of equitable tolling in a case where the habeas petitioner argued that attorney misconduct and delayed notification of a state court judgment constituted an "extraordinary circumstance," the Sixth

Circuit pointed out that the petitioner had not acted with reasonable diligence by waiting eighteen months to make any inquiries about his case status).

Petitioner also conclusorily argued in support of his motion for delayed appeal to the Ohio Court of Appeals that his delay was justified because he suffered a "major clinical depression" for "several years," took certain medications that affected his "cognitive functions," and is a "lay person" with only limited access to the prison law library. (*See* Doc. 6, Ex. 19). Petitioner's *pro se* status, limited library access, and professed "ignorance of the law" do not constitute an extraordinary circumstance sufficient to excuse his numerous, prolonged delays in this case. *See, e.g., Hall, supra,* 2011 WL 5965837, at *6; *see also Johnson v. United States,* 544 U.S. 295, 311 (2005) (in a case where the defendant defended his delay of over 21 months in challenging a state conviction on the basis of his *pro se* status and lack of "sophistication" in understanding legal procedures, the Court stated: "[W]e have never accepted *pro se* representation alone or procedural ignorance as an excuse for prolonged inattention when a statute's clear policy calls for promptness.").

The Sixth Circuit recently held that mental incompetence or incapacity, which prevents the timely filing of a habeas petition, is an extraordinary circumstance that may equitably toll the one-year limitations period. *Ata v. Scutt,* __ F.3d __, No. 09-1522, 2011 WL 5903658, at *5 (6th Cir. Nov. 28, 2011). To obtain equitable tolling on that basis, the petitioner must demonstrate that (1) he suffers a mental incompetence or incapacity, and (2) his mental incompetence or incapacity caused his failure to comply with the statute of limitations. *Id.* "[A] blanket assertion of mental incompetence is insufficient to toll the statute of limitations. Rather, a causal link between the mental condition and untimely filing is required." *Id.* (citing *McSwain v. Davis,* 287

F. App'x 450, 456 (6th Cir. 2008), *cert. denied,* 129 S.Ct. 2824 (2009)).

Here, petitioner has not alleged any facts to support a causal connection between his alleged "major clinical depression" and his ability to file a timely habeas corpus petition, or for that matter, to diligently pursue his state remedies. *Cf. McSwain*, 287 F. App'x at 457. To the extent petitioner has asserted that his "cognitive functions" were affected by medications that he took from the time of his arrest "until September of 2007" and "from early 2008 until November 2008," any claim of "causal connection" is belied by the fact that petitioner was able to file a motion to withdraw his guilty plea in January 2008 and timely appealed the denial of that motion during the period of time he was taking one of the medications. (*See* Doc. 6, Exs. 6, 8-9). In any event, petitioner has not explained his significant delays occurring after November 2008, when he was no longer taking medications that arguably affected his ability to pursue relief in the state and federal courts. Therefore, petitioner's allegations regarding his mental condition are insufficient to establish his entitlement to equitable tolling of the limitations period in this case.

As a final argument for equitable tolling, petitioner contends that he is actually innocent of the felonious assault charged in Count 12 of the indictment. A credible claim of actual innocence can provide a basis for equitable tolling of the limitations period. *See Souter v. Jones,* 395 F.3d 577, 602 (6th Cir. 2005). The procedural bar to review may be excused if the "habeas petitioner can demonstrate that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt." *Id.*; *see also McSwain,* 287 F. App'x at 458 (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). The standard is "demanding and permits review only in the 'extraordinary' case." *House v. Bell,* 547 U.S. 518, 538 (2006) (quoting *Schlup,* 513 U.S. at 327). Petitioner has not made such a showing in this case. First, to the extent he challenges

22

the weight and sufficiency of evidence available to establish guilt on the felonious assault charge, actual innocence means factual innocence, not mere legal insufficiency. *Souter,* 395 F.3d at 590 (citing *Bousley v. United States,* 523 U.S. 614, 623 (1998)); *see also House,* 547 U.S. at 538; *Casey v. Tennessee,* 399 F. App'x 47, 48 (6th Cir. 2010). Second, petitioner has not provided any evidence to support his conclusory actual innocence claim. Indeed, petitioner does not contest his guilt for aggravated burglary with firearm specification, two counts of kidnapping, and two counts of assault. Moreover, it appears from the record that there was an evidentiary basis for the felonious assault offense charged in Count 12, given testimony that petitioner raised his gun and aimed it at one of the police officers who responded to the scene of the home invasion. (*See* Doc 1, Exs. 26, 32).

Accordingly, in sum, the undersigned concludes that the instant petition, which petitioner states was placed in the prison mailing system on February 17, 2011 (*see* Doc. 3, p. 16), is time-barred. To the extent that the one-year limitations provision set forth in 28 U.S.C. § 2244(d)(1)(A) applies to petitioner's claims, the statute of limitations commenced running when petitioner's conviction became final in April 2002 and expired one year later in April 2003. At the very latest, the statute of limitations began to run in October 2006, when petitioner claims that he discovered his trial counsel had not filed an appeal on his behalf and was no longer representing his interests, and expired in October 2007. Neither the statutory tolling provision set forth in 28 U.S.C. § 2244(d)(2) nor equitable tolling principles apply to extend the limitations period in this case. Therefore, respondent's motion to dismiss (Doc. 6) should be **GRANTED**, and the instant habeas corpus petition (Doc. 3), filed years after the statute of limitations had run its course, should be **DISMISSED** with prejudice.

23

## IT IS THEREFORE RECOMMENDED THAT:

1. Respondent's motion to dismiss (Doc. 6) be **GRANTED**, and that petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 3) be **DISMISSED** with prejudice on the ground that it is time-barred under 28 U.S.C. § 2244(d).

2. A certificate of appealability should not issue for any of the claims alleged in the petition, which this Court has concluded is barred from review on a procedural ground, because under the first prong of the applicable two-part standard enunciated in Slack v. *McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether the Court is correct in its procedural ruling.[10]

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore DENY petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: 12/27/11

cbc

Karen L. Litkovitz
United States Magistrate Judge

---

[10]Because the first prong of the *Slack* test has not been met, the Court need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in any of his time-barred grounds for relief. *See Slack,* 529 U.S. at 484. However, it is noted that to the extent petitioner claims in various grounds that his sentence is invalid under *Apprendi,* as extended in *Blakely* and applied in *Foster,* he fails to state a valid claim because those decisions do not apply to the sentence that he and the State agreed to as a term of their plea agreement and because neither *Blakely* nor *Foster* is retroactively applicable to his sentence.

24

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

ROBERT SNEAD,
    Petitioner,

      vs

WARDEN, MADISON CORRECTIONAL
INSTITUTION,
    Respondent.

Case No. 1:11-cv-127

Spiegel, J.
Litkovitz, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), WITHIN 14 DAYS after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections WITHIN 14 DAYS after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

A. Signature

X ☑ Agent
☐ Addressee

B. Received by ( *Printed Name* ) | C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

1. Article Addressed to:

Robert Snead # 425-370
Madison Corr. Inst.
PO Box 740
London, OH 43140-0740

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered       ☐ Return Receipt for Merchandise
☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? *(Extra Fee)*   ☐ Yes

2. Article Number
*(Transfer from service label)*

7010 3090 0000 8524 9912

PS Form **3811**, February 2004      Domestic Return Receipt      102595-02-M-1540